## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MATTEW C. CRUZ,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 25-cv-00708-SPM** |
| **COUNSELOR HAGGERT,**<br>**C/O OAKLEY,**<br>**C/O BEAR, and**<br>**C/O HELSLEY,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Matthew Cruz, an inmate in the custody of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges the following: In March 2025, the Illinois Department of Corrections began transitioning to a new tablet media provider, ICSolutions from Global Tel* Link Corp. (Doc. 1, p. 2). Each inmate was given the option to send their tablet home or return the old GTL tablet prison staff and receive a $75.00 refund. Prior to distributing the new tablets, staff came through the housing units at Pinckneyville Correctional Center collecting the GTL tablets and passing out

refund contracts. At the time, Plaintiff was at the commissary and was not present in the unit while this process was taking place. Plaintiff was not offered the opportunity to choose which option he wanted – accept the refund or send his GTL tablet home. (*Id.*).

On March 17, 2025, staff distributed the new tablets and user contracts. (Doc. 1, p. 2). Plaintiff told Correctional Officer Helsley that he was not present when the GTL tablets were retrieved and that he still needed to turn in his old tablet and sign the paperwork for the $75.00 refund. Plaintiff placed his GTL tablet on the chuckhole ledge. Helsley told Plaintiff, "That shit is over with," and ordered Plaintiff to place his I.D. on the chuckhole with his tablet. Helsley then threw Plaintiff's GTL tablet to the ground, breaking it. Helsley assigned Plaintiff a new ICSolutions tablet. Plaintiff tried to tell Helsley that he still needed to sign the new tablet user agreement to accept the new tablet, but Helsley ignored Plaintiff and walked away from his cell. (*Id.*).

Immediately, Plaintiff called for Lieutenant Johnson and reported the incident and Helsley's misconduct. (Doc. 1, p. 2). Johnson told Plaintiff that because he, Johnson, did not witness the interaction, he could not do anything about it. (*Id.* at p. 3).

Because he did not sign the new tablet agreement, Plaintiff left the new ICSolutions tablet on the chuckhole ledge. (Doc. 1, p. 3). Correctional Officer Bear came by Plaintiff's cell and asked Plaintiff why the new tablet was still sitting on the chuckhole ledge. Plaintiff explained the situation. Bear then took the tablet and accessories and told Plaintiff, "Well now you're fucked you won't get anything now." (*Id.*).

The next day, on March 18, 2025, Plaintiff spoke to Correctional Officer Oakley and informed Oakley that he did not receive the paperwork to receive the $75.00 refund for his GTL tablet and that he had not been issued a new tablet. (Doc. 1, p. 3). Oakley told Plaintiff that he could not do anything because "the system" showed that Plaintiff had already been issued a new

tablet. (*Id.*).

Plaintiff wrote a grievance, but he did not receive a grievance receipt with an assigned grievance number. (Doc. 1, p. 3). Plaintiff wrote a request slip to Counselor Haggert about the status of the grievance. Plaintiff spoke to Counselor Haggert on March 19, 2025, and Haggert told Plaintiff that she had received his grievance and was working to address the tablet issue. (*Id.*).

By March 26, 2025, Plaintiff still had not received a response from Counselor Haggert, so he wrote a request slip to the clinical services department seeking the grievance number. (Doc. 1, p. 3). He did not receive a response. (*Id.*).

On April 1, 2025, Haggert came to Plaintiff's cell and told him that since the system recorded Plaintiff has already having a tablet there was nothing she could do to assist him. (Doc. 1, p. 3). Plaintiff asked her to investigate the situation and respond to the grievance. He stated that the video camera footage would show that he in fact did not receive a new tablet. Haggert became irate and told Plaintiff that he would not receive a response because she had thrown away his grievance. Plaintiff also tried to explain to Haggert that he had not received his refund for the old tablet, at which point she began yelling at Plaintiff and eventually stormed off of the wing. (*Id.*).

On April 4, 2025, Plaintiff asked Correctional Officer Helsley about the status of his tablet. (Doc. 1, p. 3). Helsley told Plaintiff he was not getting one. (*Id.* at p. 4). Helsley threatened to shake down Plaintiff's cell and destroy Plaintiff's property if Plaintiff submitted a complaint about not having a tablet. (*Id.*).

Around April 10, 2025, Correctional Officer Oakley came to Plaintiff's housing unit to handout replacement tablets for inmates whose tablets had software problems and to help inmates with connection issues. (Doc. 1, p. 4). Plaintiff asked Oakley about the status of his tablet. Oakley told Plaintiff that because he had been rude to Counselor Haggert, she had told the correctional officers not to assist Plaintiff. Oakley told Plaintiff that if he wanted a tablet, then he would have

to pay $110.00. Plaintiff asked Oakley why is it that he would have to pay for a new tablet when he never received one in the first place. Oakley responded, "Suck it up." (*Id.*).

DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**    Eighth Amendment cruel and unusual punishment claim against Helsley, Haggert, Oakley, and Bear.

**Count 2:**    Fourteenth Amendment due process claim against Helsley, Haggert, Oakley, and Bear for depriving Plaintiff of a new tablet and his refund money.

**Count 3:**    Fourteenth Amendment due process claim against Haggert for failing to process Plaintiff's grievance.

**Count 4:**    First Amendment retaliation claim against Helsley and Oakley.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

Count 1

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez,* 914 F. 3d 1040, 1051 (7th Cir. 2019). To prevail on an Eighth Amendment claim based on constitutionally inadequate prison conditions, the plaintiff must show that (1) the conditions in the prison were objectively sufficiently serious " – *i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety," *Id.,* and (2) prison officials

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

acted with deliberate indifference to those conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted). "[T]he Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349 (1981). Thus, "[p]rison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012).

Plaintiff's allegations regarding Defendants' refusal to refund him for his old tablet and issue him a new tablet do not amount to the type of extreme deprivation that violates the Eighth Amendment. While Defendants were rude and unprofessional to Plaintiff during their interactions, this type of conduct also does not give rise to a constitutional claim. *See Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009) (verbal harassment, "while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."). Accordingly, Count 1 is dismissed.

### Count 2

Plaintiff has also failed to state a claim under the due process clause for the denial of his property – a $75.00 refund and a new tablet. The Fourteenth Amendment due process clause guarantees the right to be free from deprivations of property by state actors. To survive preliminary review, a plaintiff must plead facts establishing that the deprivation of his property occurred without due process of law. If the state provides an adequate remedy, however, a plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).

Here, Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); 705 Ill. Comp. Stat. 505/8. *See also Sorrentino v. Godinez*, 777 F.3d 410, 414-15 (7th Cir. 2015). Thus, Plaintiff does not have a Fourteenth Amendment claim for the deprivation of his refund money and new tablet in federal court. Count 2 is dismissed.

**Count 3**

Plaintiff claims that Counselor Haggert failed to process his grievance and threw it away. Prison grievance procedures, however, are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992); *Shango v. Jurich,* 681 F.2d 1091, 1100–01 (7th Cir.1982). Accordingly, Plaintiff has failed to state a claim against Haggert for a constitutional violation in refusing to process his grievance. Count 3 is dismissed.

**Count 4**

To succeed on a First Amendment retaliation claim, Plaintiff must show "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Plaintiff claims that Helsley threatened to shake down his cell and destroy his property if Plaintiff complained about not receiving a new tablet. (Doc. 1, p. 3-4). This is sufficient for Count 4 to proceed against Helsley. *See Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011) ("[t]he First Amendment prohibits threats of punishment designed to discourage future protected speech").

As to Oakley, Plaintiff asserts that Oakley refused to help him in obtaining a new tablet because he was "rude to Ms. Haggert," and Oakley would only issue Plaintiff a tablet if he paid $110.00. (Doc. 1, p. 3). These allegations do not state a First Amendment retaliation claim. Based

on the facts as pled, Oakley denied Plaintiff a tablet because he believed that Plaintiff had been disrespectful to Counselor Haggert, and this type of speech, backtalk or argument, is not protected by the First Amendment. *See e.g., Caffey v. Maue*, 679 Fed. App'x 487, 490-91 (7th Cir. 2017) (refusing to help correctional officers in an investigation and calling them unprofessional was not protected speech); *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) (finding an inmate engaged in unprotected backtalk when he insisted on talking to a lawyer after a guard said no). Accordingly, Count 4 is dismissed as to Oakley.

DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1, 2,** and **3** are **DISMISSED**. **COUNT 4** will proceed against Helsley and is **DISMISSED** as to Oakley. Because there are no surviving claims against Haggert, Oakley, and Bear, they shall be **TERMINATED** as defendants on the docket.

The Clerk of Court **SHALL** prepare for Defendant Helsley the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only

Page 7 of 9

by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant only needs to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 20, 2025**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.